Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax:  (516) 234-7800
spencer@spencersheehan.com

United States District Court
Eastern District of New York                                    1:20-cv-02768

| | |
|---|---|
| Amanda Williams, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br><br>                - against -<br><br>Walmart Inc.,<br><br>                            Defendant | Complaint |

       Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

       1.     Walmart Inc. ("defendant") manufactures, distributes, markets, labels and sells infant formula powders to children older than 12 months labeled as "Toddler Beginnings" under their Parent's Choice brand ("Products").

       2.     The Products are available to consumers from defendant's retail stores and website and are sold throughout New York and the other forty-nine (49) states.

       3.     Feeding infants and toddlers, including the transition from only breastfeeding or infant formula to the regular family diet is "critical for establishing healthy dietary preferences and preventing obesity in children."[1]

---

[1] Jennifer L. Harris, and Jennifer L. Pomeranz, "Infant formula and toddler milk marketing: opportunities to address harmful practices and improve young children's diets." Nutrition Reviews (2020).

4. Established expert organizations recommend "exclusive breastfeeding for the first 6 months of life with the addition of complementary foods and the continuation of breastfeeding until at least 12 months of age."[2]

5. After 12 months, experts recommend whole plain cow's milk and healthy foods as part of balanced diet.

6. Since 2003, rates of breastfeeding have increased significantly, resulting in a decrease in sales of infant formula.

7. "Transition formulas" have emerged as a profitable alternative and are a way to sell infant formula to children older than twelve (12) months.[3]

8. U.S. Nielsen data shows that advertising spending on transition formula quadrupled between 2003 and 2015, with sales increasing almost threefold during this period.

I. Regulatory Background

9. Infant formula is defined as "a food which purports to be or is represented for special dietary use for infants by reason of its simulation of human milk or its suitability as a complete or partial substitute for human milk." 21 C.F.R. § 106.3.

10. Infant formula is subject to FDA regulations requiring that a food label bear a statement of identity containing the common or usual food name.

11. The statement of identity for the Parent's Choice Infant Product (0-12 months) and Toddler Beginnings Product (9 Months & Up) are identical: "Infant Formula with Iron – Milk-based powder."

---

[2] Jennifer L. Pomeranz, Maria J. Romo Palafox, and Jennifer L. Harris. "Toddler drinks, formulas, and milks: Labeling practices and policy implications." Preventive medicine 109 (2018): 11-16 (citing American Academy of Pediatrics (AAP) Committee on Nutrition and World Health Organization (WHO) findings).
[3] *Id*.





12. Though the Products are targeted towards different age ranges with different nutritional needs, they share the same labeling format and similar statements, shown below.

3

| Toddler Beginnings | Infant |
|---|---|
| Stage 2: 9 Months & Up | Stage 1: Through 12 Months |
| DHA, Iron & Choline to Help Nourish the Brain | DHA and Choline to Help Support Brain Development |
| Balanced Nutrition | Nutrition Tailored for Infants |
| | Our Closest Formula to Breast Milk |
| Neuro Support | Neuro Complete |
| Supports Brain Development | Supports Brain Development |
| Cognitive, Social, Motor, Communication | Cognitive, Social, Motor, Communication |

13. "Infant formula" is legally defined as a product for use by persons not more than 12 months old.

14. The name "Infant Formula with Iron – Milk-based powder" for the Toddler Beginnings Product (9 Months & Older) is deceptive and misleading because it is "confusingly similar to the name of" the Infant Product intended for infants, between zero and twelve months old. 21 C.F.R. § 102.5(a).

15. "Infant Formula with Iron – Milk-based powder" is a misleading and deceptive term for the Toddler Beginnings Product (9 Months & Older) because it does not "state[s], in clear terms, what it is in a way that distinguishes it from different foods." 21 C.F.R. § 102.5(a).

16. The Toddler Beginnings Product appears, based on the labeling, to be a "transition" product, as shown by the indication of "Stage 2" compared to the Infant Product's "Stage 1."

17. Through the identical names, statements and design of the two products, caregivers of young children are led to believe that the Toddler Beginnings Product is nutritionally

appropriate for children of the targeted age group – 9 months and above and implies that infants and young toddlers have identical nutrient requirements, which is false.

18. In fact, the American Academy of Pediatrics (AAP) Committee on Nutrition and the World Health Organization (WHO) have recommended that beyond 12 months, children's nutritional needs be provided only with whole cow's milk and healthy foods.[4]

19. The similar labeling of the Toddler Beginnings Product and Infant Product causes caregivers to make incorrect nutritional decisions.

20. For instance, a recent study of caregivers' understanding of transition formula labeling concluded that 52% expected these products to "give toddlers nutrition that they wouldn't get from other sources."[5]

21. 70% of persons surveyed believed transition formulas like Toddler Beginnings is a suitable drink for toddlers, despite expert recommendations that they offer "no unique nutritional value beyond what could be achieved through a nutritionally adequate diet; furthermore, they contribute added sugars to the diet."[6]

22. Because the Toddler Beginnings Product utilizes the Infant Formula nutrition panel as opposed to the Nutrition Facts panel, caregivers are unable to identify the added sugars, which experts agree is inconsistent with nutritional needs of children in this age range.[7]

---

[4] AAP Committee on Nutrition, 1988. Follow-on formulas follow-up or weaning formulas. Pediatrics 83, 1067 1989; World Health Organization, July 17, 2013. Information concerning the use and marketing of follow-up formula.
[5] Maria J Romo-Palafox and JL Pomeranz et al., Marketing claims on infant formula and toddler milk packages: What do caregivers think they mean? , UCONN Rudd Center for Food Policy & Obesity, September 2019.
[6] Id.
[7] Maria J Romo-Palafox and JL Pomeranz et al., "Infant formula and toddler milk marketing and caregiver's provision to young children," Journal of Maternal and Child Nutrition, vol. 16,3 (2020): e12962. doi:10.1111/mcn.12962

5

Transition Formula

```
DILUTED: EACH 5 FL OZ (150mL) CONTAINS 100 CALORIES
NUTRIENTS:            PER 100 CALORIES:    VITAMINS:                      PER 100 CALORIES:
PROTEIN g ........................ 2.6    BIOTIN mcg ............................ 3
FAT g............................. 5.3    VITAMIN C (ASCORBIC ACID) mg ......... 12
CARBOHYDRATE g .................. 10.8    CHOLINE mg ........................... 24
WATER g.......................... 131     INOSITOL mg........................... 6
LINOLEIC ACID mg ................ 800     MINERALS:
VITAMINS:                                 CALCIUM mg........................... 200
VITAMIN A IU .................... 300     PHOSPHORUS mg....................... 130
VITAMIN D IU ..................... 60     MAGNESIUM mg......................... 8
VITAMIN E IU ...................... 2     IRON mg............................. 1.5
VITAMIN K mcg ..................... 9     ZINC mg.............................. 1
THIAMINE (VITAMIN B₁) mcg ........ 80     MANGANESE mcg....................... 15
RIBOFLAVIN (VITAMIN B₂) mcg ..... 140     COPPER mcg.......................... 75
VITAMIN B₆ mcg ................... 60     IODINE mcg.......................... 10
VITAMIN B₁₂ mcg .................. 0.3    SELENIUM mcg........................ 2.8
NIACIN mcg ..................... 1000     SODIUM mg........................... 36
FOLIC ACID (FOLACIN) mcg.......... 16     POTASSIUM mg....................... 130
PANTOTHENIC ACID mcg............ 500      CHLORIDE mg......................... 80
```

23. In the Toddler Beginnings Product, the added sugar is in the form of corn syrup, absent from the Infant product.

> **INGREDIENTS:** NONFAT MILK, VEGETABLE OILS (PALM OLEIN, SOY, COCONUT, HIGH OLEIC [SAFFLOWER OR SUNFLOWER] OILS), ==CORN SYRUP==, LACTOSE, GALACTOOLIGOSACCHARIDES, CALCIUM PHOSPHATE…

Infant Formula

**INGREDIENTS:** NONFAT MILK, LACTOSE, VEGETABLE OILS (PALM OLEIN, COCONUT, SOY, HIGH OLEIC [SAFFLOWER OR SUNFLOWER] OIL), WHEY PROTEIN CONCENTRATE, GALACTOOLIGOSACCHARIDES‡, **LESS THAN 1%:** MORTIERELLA ALPINA OIL*, CRYPTHECODINIUM COHNII OIL**, FRUCTOOLIGOSACCHARIDES‡, SOY LECITHIN, VITAMIN A PALMITATE, VITAMIN D₃, VITAMIN E ACETATE, VITAMIN K₁, THIAMINE HYDROCHLORIDE, RIBOFLAVIN, VITAMIN B₆ HYDROCHLORIDE, VITAMIN B₁₂, NIACINAMIDE, FOLIC ACID, CALCIUM PANTOTHENATE, BIOTIN, ASCORBIC ACID, CHOLINE BITARTRATE, INOSITOL, CALCIUM CARBONATE, CALCIUM CHLORIDE, CALCIUM HYDROXIDE, MAGNESIUM CHLORIDE, FERROUS SULFATE, ZINC SULFATE, MANGANESE SULFATE, CUPRIC SULFATE, POTASSIUM BICARBONATE, POTASSIUM IODIDE, POTASSIUM HYDROXIDE, POTASSIUM PHOSPHATE, SODIUM SELENITE, SODIUM CITRATE, TAURINE, L-CARNITINE, BETA-CAROTENE, MIXED TOCOPHEROL CONCENTRATE, ASCORBYL PALMITATE, MONOGLYCERIDES, NUCLEOTIDES (ADENOSINE-5'-MONOPHOSPHATE, CYTIDINE-5'-MONOPHOSPHATE, DISODIUM GUANOSINE-5'-MONOPHOSPHATE, DISODIUM URIDINE-5'-MONOPHOSPHATE). **CONTAINS MILK AND SOY INGREDIENTS.**

‡A TYPE OF PREBIOTIC *A SOURCE OF ARACHIDONIC ACID (ARA) **A SOURCE OF DOCOSAHEXAENOIC ACID (DHA)

<u>Toddler Beginnings</u>

**INGREDIENTS:** NONFAT MILK, VEGETABLE OILS (PALM OLEIN, SOY, COCONUT, HIGH OLEIC (SAFFLOWER OR SUNFLOWER) OIL), CORN SYRUP, LACTOSE, GALACTOOLIGOSACCHARIDES‡, CALCIUM PHOSPHATE, **LESS THAN 1%:** MORTIERELLA ALPINA OIL*, CRYPTHECODINIUM COHNII OIL**, FRUCTOOLIGOSACCHARIDES‡, LUTEIN, MIXED TOCOPHEROL CONCENTRATE, MONOGLYCERIDES, SOY LECITHIN, VITAMIN A PALMITATE, VITAMIN D (CHOLECALCIFEROL), VITAMIN E (*dl*-ALPHA TOCOPHERYL ACETATE), VITAMIN K (PHYTONADIONE), ASCORBYL PALMITATE, BETA-CAROTENE, THIAMINE HYDROCHLORIDE, RIBOFLAVIN, PYRIDOXINE HYDROCHLORIDE, CYANOCOBALAMIN, NIACINAMIDE, FOLIC ACID, CALCIUM PANTOTHENATE, BIOTIN, ASCORBIC ACID, CHOLINE BITARTRATE, INOSITOL, CALCIUM CARBONATE, CALCIUM HYDROXIDE, CUPRIC SULFATE, FERROUS SULFATE, MANGANESE SULFATE, POTASSIUM HYDROXIDE, POTASSIUM BICARBONATE, POTASSIUM CHLORIDE, POTASSIUM PHOSPHATE, SODIUM CITRATE, SODIUM SELENITE, ZINC SULFATE, L-CARNITINE, TAURINE, NUCLEOTIDES (ADENOSINE-5'-MONOPHOSPHATE, CYTIDINE-5'-MONOPHOSPHATE, DISODIUM GUANOSINE-5'-MONOPHOSPHATE, DISODIUM URIDINE-5'-MONOPHOSPHATE). **CONTAINS MILK AND SOY INGREDIENTS.**

24. Compared to the recommended whole cow's milk, the Toddler Beginnings Product contains less protein, more calories and more sugars (carbohydrates).

**Nutritional Composition for 8 fl. oz.**

| Nutrient | Unit | Whole Cow's Milk | Toddler Beginnings |
|---|---|---|---|
| Energy | kcal | 149 | 160 |
| Protein | g | 7.69 | 4.16 |
| Total Fat | g | 7.98 | 8.48 |
| Carbohydrate | g | 12.8 | 19.44 |

25. Consumer research has indicated use of transition formulas such as Toddler Beginnings results in prolonged use of expensive, re-branded, infant formula instead of transitioning infants to cow's milk and other foods.

26. Transition formulas such as Toddler Beginnings is also several times more expensive than whole cow's milk.[8]

---

[8] Consensus Statement, <u>Healthy Beverage Consumption in Early Childhood: Recommendations from Key National Health and Nutrition Organizations</u>, Robert Wood Johnson Foundation, Healthy Eating Research, Sept. 2019.

27. According to defendant's website, Toddler Beginnings costs $11.83 for net weight 20 ounces or 567 g.[9]

28. According to the monthly Retail Milk Prices Report of the United States Department of Agriculture, whole milk in New York City cost $3.85 per gallon in May 2020.[10]

29. For comparison purposes, 567 g of Toddler Beginnings provides sufficient powder for making eight 8-ounce bottles, or 64 ounces (1 gallon).

30. This means the Toddler Beginnings is greater than three times the cost of the recommended alternative.[11]

31. Defendant's branding and packaging of Toddler Beginnings is designed to – and do – deceive, mislead, and defraud consumers.

32. Had plaintiff and class members known the truth and not been subjected to the deceptive and misleading labeling and representations, they would not have bought Toddler Beginnings or would have paid less for it.

33. Defendant's false, deceptive, and misleading branding and packaging of the Toddler Beginnings Product has enabled defendant to sell more of the Product and at higher prices per unit, than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

34. The value of the Toddler Beginnings that plaintiff purchased and consumed was materially less than its value as represented by defendant.

35. The Product contains other representations which are misleading and deceptive.

---

[9] Walmart.com, Parent's Choice Toddler Beginnings Infant Formula with Iron, 20 oz, accessed June 22, 2020.
[10] Agriculture Marketing Service, Retail Milk Prices Report, May 2020.
[11] 11.85 divided by 3.85 equals 3.07.

Jurisdiction and Venue

36. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

37. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

38. Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

39. This is a reasonable assumption because the Toddler Beginnings are sold in stores across the nation and have been sold bearing the allegedly misleading claims for several years.

40. Plaintiff is a citizen of New York.

41. Defendant is a Delaware corporation with a principal place of business in Bentonville, Benton County, Arkansas and is a citizen of Arkansas.

42. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

43. Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

44. A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

45. Plaintiff is a citizen of Jamaica, Queens County, New York.

46. During the relevant statutes of limitations, plaintiff purchased the Product for

personal consumption within this district and/or State.

47. Plaintiff paid more for the Toddler Beginnings Product than she otherwise would have if it did not have the misleading representations and give a deceptive representation of its usefulness for children over 9 months.

48. Plaintiff purchased the Toddler Beginnings Product from defendant within the statute of limitations period.

49. Plaintiff paid a premium price for the Toddler Beginnings Product because prior to purchase, plaintiff saw and relied on the misleading representations.

50. Plaintiff would like to purchase the Products again if she is assured they are reformulated such that they would be recommended for nutritional needs of children older than 12 months.

51. Plaintiff cannot rely on the future representations of the Product in the future due to the misleading representations and messages conveyed by them.

52. Defendant Walmart Inc. is a Delaware corporation with a principal place of business in Bentonville, Arkansas, Benton County.

53. Defendant owns and controls the Parent's Choice brand of baby food and nutrition products.

## Class Allegations

54. The classes will consist of all consumers in New York and the other forty-nine (49) states who purchased the Products based on misleading representations.

55. Plaintiff seeks to certify a nationwide and/or state class for injunctive relief pursuant to Rule 23(b)(2).

56. Common questions of law or fact predominate and include whether defendant's

representations and practices were likely to harm plaintiff and if plaintiff and class members are entitled to damages.

57. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

58. Plaintiff is an adequate representative because her interests do not conflict with other members.

59. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

60. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

61. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

62. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York GBL §§ 349 & 350
(Consumer Protection from Deceptive Acts)

63. Plaintiff incorporates by reference all preceding paragraphs.

64. Plaintiff and class members desired to purchase products which were as described by defendant and expected by reasonable consumers, given the product type.

65. Plaintiff and class members understood the Toddler Beginnings to be nutritionally appropriate for children over 12 months because they were labeled "Stage 2, 9 Months & Older" and shared the labeling format of actual infant formula, an imprimatur of accuracy and trust.

66. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

67. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair

because it gives the impression to consumers the Products are necessary and contribute to the growth, nutrition and development of children older than 12 months.

68. Plaintiff and class members would not have purchased the Products for feeding to their children older than 12 months nor paid as much if the true facts had been known, suffering damages.

## Negligent Misrepresentation

69. Plaintiff incorporates by reference all preceding paragraphs.

70. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are necessary and contribute to the growth, nutrition and development of children older than 12 months.

71. Defendant had a duty to disclose and/or provide non-deceptive labeling of the Product and its nutritional appropriateness, uses, components and ingredients, and knew or should have known same were false or misleading.

72. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

73. The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

74. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

75. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

### Breaches of Express Warranty, Implied Warranty of Merchantability and Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

76. Plaintiff incorporates by reference all preceding paragraphs.

77. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are necessary and contribute to the growth, nutrition and development of children older than 12 months.

78. The Products warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

79. Defendant had a duty to disclose and/or provide a non-deceptive description and identification of the Products.

80. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

81. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

82. Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

83. The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

84. Plaintiff and class members relied on the claims, paying more than they would have.

### Fraud

85. Plaintiff incorporates by references all preceding paragraphs.

86. Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are necessary and contribute to the

13

growth, nutrition and development of children older than 12 months.

87. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label by describing it as "Infant Formula – Milk-Powder with Iron" even though it was intended for consumption by children who did not fit the definition of infants and had different nutritional needs.

88. Plaintiff and class members observed and relied on defendant's claims, causing them to pay more than they would have, entitling them to damages.

## Unjust Enrichment

89. Plaintiff incorporates by reference all preceding paragraphs.

90. Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

## Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated: June 22, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck, NY 11021
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-02768
United States District Court
Eastern District of New York

Amanda Williams, individually and on behalf of all others similarly situated,

                          Plaintiff,

    - against -

Walmart Inc.,

                          Defendant

## Complaint

```
       Sheehan & Associates, P.C.
        505 Northern Blvd., #311
          Great Neck, NY 11021
          Tel: (516) 303-0552
          Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: June 22, 2020

                                                                  /s/ Spencer Sheehan
                                                                      Spencer Sheehan